We'll move on to our third argument today. Schwarz v. Kijakazi, case number 22-35792. Yeah, that's not going to work. Oh, much better. Good morning, your honors. Opposing counsel. May it please the court. Allison Young for plaintiff appellate Amy Schwarz. This disability case is primarily concerning the claimant's testimony about the frequency and intensity of her headaches. There are numerous sub-issues, whether the ALJ improperly relied on a brief period of improvement. There was an issue raised by appellee's brief about whether there's an inherent incompatibility with the receipt of unemployment benefits. Can you address that? Because that, I mean, when I looked at the case slot on that, it seemed pretty clear that that was a problem. That's the Colvin case from 2014. So why doesn't that control here? Well, for one thing, Social Security has revised their rules on the issue of claimant's credibility, actually removing the term credibility from the discussion. This is not about whether... But the credibility... I understand that. I give you that. I think you're right about that. But that goes to the credibility of the witness. But that doesn't... The 2016 regulations don't do anything to change the underlying position that... I mean, your client, in this case, the petitioner, testified or certified that she was capable of working in 2020 when she received unemployment benefits. Yes. So Washington's unemployment statute requires a person to certify that they are able to do suitable work, and that is work that takes into account their limitations as well as their past pattern of work. If a person was working part-time before, they can be looking for part-time work now, and that would satisfy the requirements for applying for unemployment. I would also point out that the Supplemental Security Income Statute requires a person to apply for and receive any other benefits that they might be eligible for. And it's a little paradoxical that applying for unemployment, if you are potentially eligible, is a requirement of SSI but could also bar SSI. I think the case was fairly clear that the standard for receiving unemployment benefits from the state is a different and more lenient standard, that that's not necessarily preclusive of getting disability benefits from... That's essentially our argument, yes. Thank you. It may not be that there's a big sort of gap there in which you are eligible for unemployment but eligible for social security disability, but our case law says if there is such a gap, applying for and receiving unemployment benefits is not in itself preclusive. Right. And that, I think, goes to the heart of the concern. If applying for unemployment is taken as a per se barrier to disability, then we have this paradox. Is she still receiving benefits at the time of the hearing? I don't believe that she was. I'm not actually sure of that, Your Honor. I thought she said that at the hearing. Okay. Well, I will defer to Your Honor's reading of the record. I don't recall. Do we know anything about an employment history after the closed period? I'm sorry, what closed period? The period for which she's applying for benefits. I believe she's applying for ongoing benefits. Do we know anything about her employment history after that? To the best of my knowledge, she has not returned to work. So there was, the ALJ did discuss a period of improvement in October 2020 through January 2021. There was a reduced number of headaches, and that seems to be the judge's only substantive addressing of... I thought there were two instances where, in the record that the ALJ pointed to, where the one was a physical therapy, and I thought the other was taking her off a particular medication. Right. So there was physical therapy, which addressed the neck pain, but that was dealing with neck pain and subsequent headaches from neck pain, not migraines. And then there was also, as you said, she was taken off of her citalopram. Why can't the ALJ look at this and say, you know, with relatively conservative treatment on two occasions, the problem got a lot better, and therefore, I don't find her to be disabled? Why is that not substantial evidence? Just because a problem has improved doesn't mean it's gone away, and that doesn't address her testimony as to how often she was having headaches at the time of the hearing. Well, let me, this is a follow-up to Judge Collins. Sure. October 2020, Dr. Dara Hedrick reports migraine headaches have reduced significantly. November 13, Dr. Thompson, who later fills out this form, says we didn't have time to fully address it, but then on January 8, 2021, Dr. Thomas reports, quote, headaches, reports headaches have improved since previous exam, has only one migraine since last visit improved from previous. Yes. That seems to me inconsistent with what Dr. Thompson wrote on March the 8th, 2021. Here's to have, yes, that will cause her to miss two work days per month. This is inconsistent with the prior treatment records. With respect, Your Honor, I don't think it is. In September of 2020, it was noted that her migraines were uncontrolled. They were talking about using Botox, and it was noted that she was having migraines four times a week, lasting all day. This is a certified administrative record 625. So I think the discussion in October, November, December, January of improvement is relative to that time in September when she was having four headaches a week. There's a vast difference between four headaches a week and two headaches a month. So that certainly was reflective of improvement, but that doesn't mean that she isn't having as many headaches as she said she was, which was a couple headaches a month lasting at least a day. Okay. Also, even if her headaches got better in the latter part of 2020 into 2021, which we're not conceding, but that is seemingly the ALJ's main argument, that was more than a year after the case was filed. So she would certainly be eligible for benefits up until the time of improvement. If there's nothing further, I'll happily wait for rebuttal. Okay, great. Thank you. Good morning, your honors. May it please the court. My name is Michael Mullen and I represent the Commissioner of Social Security in this matter. Substantial evidence supports the ALJ's decision that appellant was not disabled. The ALJ assessed a residual functional capacity that was consistent with the examining opinion of Dr. Phan and the prior administrative medical findings of Drs. Judd and Fritterer. Can you address the issue Judge Fletcher raised about the difference in standards between eligibility for unemployment under Washington law and disability under the Social Security Act? Right, as this panel alluded to, receipt of unemployment benefits is not necessarily preclusive of disability. That being said, they are entirely different standards. Wait, they are entirely different standards? I'm sorry, excuse me, your honor? You said they are entirely different standards. The disability program has different standards. I'm sorry, the unemployment benefits program has different standards. That seems to suggest that this doesn't apply. I came in thinking that Colvin was pretty controlling here because she'd certified that she was capable of working in 2020. But the question is, was that certification of capable of working under the same standard? And you seem to be saying no, it was a different standard. Well, even if they are the same standard, you know, this court's guidance in GANM and is really controlling here where an applicant's ongoing receipt of unemployment benefits during the relevant period casts doubt on a claim of disability because the applicant is holding themselves out as capable of working. Cast doubt is different from necessarily preclusive. So let me come back to where I think you started. I think you said, and I want to know if you're continuing to say, that the standards for unemployment compensation under Washington law are different from the standard for disability and that one could be receiving benefits for unemployment under Washington yet nonetheless be eligible for Social Security disability. Have I stated your position accurately? I believe I would say that it's possible that an applicant could receive unemployment benefits while still possibly being eligible for disability would be very fact specific. That's what I wanted to know. It may not be that there can be a lot of such cases, but it's possible. Right. And again, the standard is very deferential to the administrative law judge. You know, under Jamerson, it's not whether... And your point, I guess, would be that even if it's not preclusive, it still fits into the substantial evidence review that we are engaged in. Exactly, Your Honor. Exactly. And in fact... It would seem to me that it means you just have to look at the nature of the disability. Right. And the ALJ looked at the record as a whole and... The ALJ did. Right. And the ALJ discussed facts, you know, in addition to the appellant's receipt of unemployment benefits. You know, the ALJ actually provided broadly five good reasons, which were largely unchallenged in the opening briefs, for why the appellant's subjective complaints of headaches were less reliable. You know, the ongoing receipt of unemployment benefits during the relevant period, but also appellant's improvements through treatment. The fact that those improvements through treatment occurred with just conservative treatment. But to come back to this point about preclusive or not, as I read the magistrate judge for the district court, the magistrate judge appeared to me to treat it as preclusive, that she'd  I think that's a mistake. But we then looked at the underlying record, which you're now pointing to, and there's a fair amount of evidence that prior to that statement by Dr. Thompson in March, there'd been a lot of improvement. And that his statement in March is not entirely consistent with the treatment records, and the ALJ relies on the treatment records. That's exactly right, Your Honor. Yeah. And of course, this court's review is de novo of Judge Fricke's decision at the district court. But I will also point out that Judge Fricke's decision was consistent with this court's holdings in say, Molina and Valentine, where as long as the ALJ provides at least one valid reason in support of the subjective symptom evaluation, then the court should uphold the ALJ's evaluation. Right. So I mentioned the improvements with just conservative treatment, but also there were inconsistencies with the objective medical evidence. And that spoke not only to headaches, but also to the other subjective symptoms that appellant had alleged. For example, appellant had alleged significant limitations from back and neck pain. That being said, you know, on examination with, for example, Dr. Phan, appellant demonstrated full strength throughout, normal muscle tone. And I actually think that ties into headaches for a couple reasons. One, appellant indicated to her treating provider that out of control neck pain is what triggers her migraines. And additionally, if appellant were in a dark room as much as she alleged having frequency of migraines, for example, she indicated that she had migraines basically weekly for two to four days at a time. To Dr. Phan, she indicated that she had one to two migraines a week, lasting one to two days. Under either report, that would be up to about 16 days of having to rest from migraines. If appellant were actually resting in a dark room that often, one may reasonably expect to see muscle wasting or atrophy, limited strength. And that's provided for in Social Security Ruling 16-3P. And again, in fact, Dr. Phan noted that appellant had full strength throughout and no signs of muscle weakness or atrophy. In fact, appellant reported her migraine limitations and headaches and other symptoms to Dr. Phan, but Dr. Phan nevertheless noted that her headaches were treatable with Imatrix, a popular migraine medication, and rest. And despite Dr. Phan noting her headache and migraine complaints multiple times, Dr. Phan did not conclude to any migraine-specific related limitations. And the ALJ found Dr. Phan's opinion persuasive and assessed a residual functional capacity that was fully consistent with Dr. Phan's medical opinion, as well as, of course, the prior administrative medical findings of Drs. Judd and Fruehrer. Moving on from the subjective symptom evaluation, appellant also argues that the ALJ should have assessed two different residual functional capacities, kind of cutting the period in half at around October 2020. That, of course, relies on appellant's meritless arguments as to subjective symptom evaluation. But furthermore, it suggests that appellant's symptoms were, or rather her reports of symptoms were more reliable, perhaps, prior to October 2020, which, of course, the ALJ did not find. In fact, prior to October 2020, appellant was still receiving unemployment benefits in the second quarter of 2020, in excess of $6,000 in that quarter, $7,000 or more in the third quarter of October 2020. In June 2020, the appellant was engaged in gardening, despite having reported to the agency that the only chores that she was doing, both indoor and outdoor, were laundry and dishes. And on top of that, she was alleging that she had, you know, difficulty walking and that she couldn't lift more than five pounds, and yet she was engaged in a daily rowing exercise program. Of course, the ALJ validly considered those activities of daily living in connection with the subjective symptom evaluation, and that's why there was absolutely no need for multiple RFCs in the period. The ALJ reasonably assessed an RFC for the entire period of review. So, in closing, the ALJ assessed a residual functional capacity that was fully consistent with Dr. Phan's examining opinion and the prior administrative medical findings. Substantial evidence supports the ALJ's decision, and the Commissioner respectfully requests that this Court uphold and affirm the ALJ's decision finding appellant not disabled. If Your Honors have any further questions, I'll be happy to answer them. Thank you. Thank you for your argument. We'll hear a rebuttal. Thank you, Your Honors. Whether or not the claimant's allegations were more credible prior to improvement or whether the ALJ found that, I think is immaterial. If the only reason the ALJ gave to reject a claimant's allegations is that they got better at some point, then the question becomes, what about the period before they got better? That question is inherently raised by relying on improvement during the period at issue. And so if that improvement happened more than a year after the protective filing date, then we have a period of at least a year where things were necessarily worse because they have to have something to have improved from. And to assess an RFC as of how things are according to the judge at the end of the period is to ignore that earlier period from which improvement took place. So if that's the only substantive addressing of the claimant's allegations, then I think that inherently needs to be remanded. What period do you think, just clarify for me what period you're talking about then, that you think needs to be revisited? At a minimum, the period from the alleged onset date, which I believe is just prior to the protective filing date, which was June of 19, up through September of 2020, at which time migraines were noted as uncontrolled and happening four times a week. And so what about the unemployment? How would that play into that? Because if we take your position that it's not preclusive but it still can be considered that she says she was capable of working, should that just be completely disregarded or can that still serve as some substantial evidence supporting the ALJ's finding? I don't think that unemployment is enough to just generally say a claimant is not credible, especially when credibility has been removed from the equation entirely. I'm not sure this goes to the credibility. In fact, to the contrary, it's actually saying she is credible in the sense that when she sought unemployment, she certified credibly that she was capable of working. Now, we've got to look at the standards for the state, apparently, for the unemployment benefits, but does that have no relevance? I wouldn't say that it has no relevance, but I think it has to be looked at in the particulars of the case. What was she alleging? What was her pattern of work before? Was she looking for full-time work? Was she certifying that she was able to do full-time work? And you think that the ALJ didn't do that here? I don't believe the ALJ did that. I would concede that that's probably enough of a question to warrant remand for further proceedings rather than immediate payment, because there might be some question—a reasonable person might think, well, she was applying for unemployment. We should look at that, but even so, there's this period of more than a year where her headaches were much worse than they were toward the end of the period. If there's nothing further, thank you. Let me ask you this. Did you ask the ALJ specifically to divide up the period for which you were requesting benefits? I'm trying to figure out whether you alerted the ALJ to the possibility, well, wait a minute, it may not be for the entire period, but we think for the earlier period, because this to me is a new argument. Well, to be clear, I didn't ask the ALJ anything. I didn't argue this case at the hearing. As far as I know, the ALJ's reliance on that period of improvement in late 2020 to 2021 is the first time it was brought up, and that was brought up in the decision. I don't recall any discussion at the hearing of, well, what about this period of improvement? So with it not being brought up, there was no opportunity to say, hey, but what about before that? Okay. Thank you. Thank you. Thank you to both counsel for your arguments. The case is now submitted, and we'll move on.
judges: FLETCHER, NELSON, COLLINS